IN THE MATTER OF THE APPLICATION TO ADOPT H. D., A MINOR.

Superior Court of New Jersey
Appellate Division

Argued December 17, 1951—Decided January 4, 1952.

Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.

*Mr. Frank Fink* argued the cause for appellants (*Mr. Morris Masor*, attorney).

*Mr. Eugene T. Urbaniak*, Deputy Attorney-General, argued the cause for respondent (*Mr. Theodore D. Parsons*, Attorney-General of New Jersey).

The opinion of the court was delivered by

JAYNE, J. A. D. The plaintiffs, husband and wife, each 28 years of age, residing in the County of Union, filed their complaint in the Union County Court, Probate Division, seeking a judgment authorizing their adoption of H. D., a female child then 19 months of age, in conformity with the terms and provisions of *R. S.* 9:3–1, *et seq.*, as amended *L.* 1944, *c.* 239; *L.* 1945, *c.* 196.

The court in obedience to the statute directed an investigation to be made by the Department of Institutions and Agencies "to verify the allegations of the complaint and reveal such facts as may be necessary to determine the condition and antecedents of the child and of the adopting parents, in order that it may be ascertained whether the said child is a proper subject for adoption, and whether the petitioner or petitioners and their home are suitable for the proper rearing of the child." *R. S.* 9:3–6, as amended *L.* 1940, *c.* 210. A report of such investigation was made in writing and returned to the court.

The investigations appear to have been diligently pursued by the department and the report expresses the following conclusions:

"Since the child's placement in the home of the plaintiffs, she has endeared herself to them. The plaintiffs are giving her love and all the advantages they would give a child of their own.

Based upon information developed by investigation and contained in this report, it is believed that the adoption of this child by the plaintiffs, represents the proper social plan for her future welfare."

The following quotation from the opinion in *In re Moffett,* 5 *N. J. Super.* 82, 87 (*App. Div.* 1949), would seem to be in touch with the present case:

"The investigating agency appointed by the Court reported that the adopting parents were respectable persons; that they had given the child excellent care and manifested great love for (her) him and that they were altogether fit persons to whom to commit the rearing of the child and that they were financially able to support (her) him."

The judge of the County Court, however, denied the prayer of the complaint, and a judgment was thereupon entered from which the plaintiffs appeal.

In consequence of the notice of appeal, the judge prepared a memorandum disclosing for our information the reasons for his decision, only one of which we deem to be legally invulnerable on the record before us.

The legal adoption by one person of the offspring of another was unwelcome to the common law of England. It seems, however, to have been recognized by the Athenians and Spartans, the Romans and ancient Germans. The writers of the New, if not the Old Testament, were familiar with its practice. *Exodus* 2:10. So also, the Babylonians. *Code of Hammurabi,* §§ 185, *et seq.* The Roman law, as revised by Justinian, was made applicable. *Sandar's Justinian* 103, *et seq.* The subject was incorporated in the *Code Napoleon,* from which it found its way through Louisiana into the statutes of sister states. *N. J. P. L.* 1877, *p.* 123 (*N. J. Rev. St.* of 1877, § 1345). The Anglo-Saxon peoples, whether from sentimental causes, peculiarities of feudal tenures, or considerations of public policy, in the early ages assumed a frosty attitude toward such a proceeding.

It must therefore be at once realized that the right in common law states to adopt a child is entirely of statutory origin.

Section 9:3–5 of the Adoption Act provides that the court at the hearing *shall require at least one witness other than*

*the petitioner* to attest to the fact that the child has resided in the home of the petitioner for the required time set forth in the statute.

Section 9:3–6 further provides that at the time of the hearing the court *shall require at least one witness other than the petitioner* to testify to the character of the petitioner, the residence of the petitioner or the child, and any other facts which the court may require with respect to the welfare of the interested parties.

■ Concededly the plaintiffs failed to comply with those sections of the statute. We deduce from the express phraseology of the statute that the Legislature deliberately embodied in addition to the necessary report of the investigating agency, those elements of proof; hence the judge was justified in declining to sanction the adoption.

A natural concern for the future welfare of this child, born in lawful wedlock but forsaken at birth by her parents, probably by reason of their indigent circumstances, is a consideration which in view of the parents' consent to the adoption and the favorable report of the investigating agency transcends in the existing posture of the case the inadvertent or incogitant omission of the prescribed statutory proof. The inference is entertained that it may be readily supplied.

We have accordingly resolved that the proceedings should be remanded to the Union County Court to afford the plaintiffs the opportunity to introduce the additional evidence mentioned in the statute.

Let a mandate issue in conformity with this conclusion.