IN THE MATTER OF THE ADOPTION OF PATRICIA SPOTTSWOOD ROBINSON AND RICHARD BLAND ROBINSON, MINORS.

WILLIAM W. MINER AND MARY R. MINER, PLAINTIFFS-APPELLANTS, v. RUSSELL M. ROBINSON, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 15, 1953—Decided July 1, 1953.

Before Judges STEIN, PROCTOR and CONLON.

*Mr. Oliver T. Somerville* argued the cause for appellants (*Messrs. Kipp, Ashen & Somerville*, attorneys).

*Mr. George F. Losche* argued the cause for the respondent (*Mr. Harry L. Towe,* attorney).

The opinion of the court was delivered by

CONLON, J. C. C. (temporarily assigned). The plaintiffs filed a complaint in the Bergen County Court seeking the adoption of two minor children, Patricia Spottswood Robinson, aged ten years, and Richard Bland Robinson, aged seven years. The complaint alleged that the infant children were residing with the plaintiffs and that the defendant, Russell M. Robinson, the father of the children, had willfully and continuously forsaken his parental obligations to them. Upon the filing of the complaint the court set the matter down for hearing and ordered that notice thereof be served upon the defendant. The court also appointed the Department of Institutions and Agencies as next friend of the minors and referred the matter to it for investigation. A hearing was thereupon had at which the defendant opposed the adoption, and the court dismissed the complaint. The plaintiffs appeal.

The defendant Russell M. Robinson, the father of the children, lives in Wyoming. Mary Miner, one of the plaintiffs, is his sister and lives with her husband, Dr. William W. Miner, in Rutherford, Bergen County, New Jersey. Dr. Miner is a practicing osteopathic physician. The mother of the children died on March 18, 1949 and in September of that year the younger child, Richard, was sent to the home of Dr. and Mrs. Miner with the consent of all the parties. The older child, Patricia, spent the winter of 1949-1950 with friends of the family in Seattle, Washington, and was then sent to live with the Miners, also with the consent of all the parties. No discussion was had with respect to the support of the children. Dr. and Mrs. Miner admit that they never sought support from the defendant and he offered none. On one occasion he sent his sister $75 at Christmas time. The defendant paid relatively little attention to his children until he came east to visit them on Christmas 1951, when he stayed two days with his sister and her husband. They admit that at that time he evinced concern and affection for

the children. The defendant gives no explicit explanation for his lack of attention to his children except to say that he was financially embarrassed when his wife died; that he owed some $9,000, and that he concerned himself primarily with restoring his financial status. He also stated that since he could not himself provide a home for the children, he thought that it "might be better for me to keep my hands off." He has reduced his indebtedness to about $1,500 and now has a position in Wyoming where he is earning $400 per month plus complete maintenance for himself and his family, including food, a car and a furnished house. Thus, he now claims to be in a position to maintain a home and properly care for the children.

By Christmas 1951, as frequently happens under such circumstances, Dr. Miner and his wife had become extremely fond of the children, and when the defendant visited them the subject was broached of his signing a consent to the adoption of the children by the Miners. He tentatively agreed, but when a formal consent was sent to him in Wyoming he declined to sign it. Thereupon the instant proceedings were instituted.

In the trial before the County Court the plaintiffs contended that the court should approve the adoption because to do so would be in the best interest of the welfare of the children. They also contended that the defendant had—in the wording of the statute—"forsaken [his] parental obligations" to the children, and that for that reason his formal consent to the adoption was unnecessary.

Upon the completion of the hearing, the court filed an opinion in which it discussed the evidence in detail and, while somewhat critical of the defendant's conduct, came to the factual conclusion that he had not forsaken his parental obligations within the intendment of the statute. The plaintiffs on this appeal seek a reversal of that factual finding. It is unnecessary to review the testimony. Suffice it to say there was ample evidence to warrant the finding of the County Court. However, even if the trial court had come to a different conclusion and had found as a fact that the defendant

had forsaken his parental obligations, the County Court was without jurisdiction to approve the adoption.

██ The County Court has no innate or common law power to approve adoptions. Its sole authority in that respect emanates from *R. S.* 9:3–1 *et seq.* That statute must be strictly construed. A prerequisite to the acquisition by the court of jurisdiction is a formal written consent to the adoption. In that respect the statute (*R. S.* 9:3–4) provides as follows:

> "A written consent, acknowledged or proved in the manner required by law for deeds to real estate, shall be presented to the court with the petition for adoption, such consent to be obtained from: * * *."

Thereafter the statute specifies from whom the consent must be obtained: (a) from the parents and the child if the child is above the age of 14 years, or (b) from the parents if the child is under 14 years, or (c) from one parent if the other is dead or has forsaken parental obligations, or other specified conditions exist, or (d) from the legal guardian of the child, or (e) from the Department of Institutions and Agencies (or other qualified society) appointed by the court as next friend if there be no guardian, or (f) by any orphanage or qualified society which has acquired custody and control of the child by grant of the parents or other lawful means.

██ Thus it will be seen that it is essential that in order for the County Court to acquire jurisdiction the petition for adoption must be accompanied by a formal consent either from the parent or some agency legally qualified to give its consent. In the instant case, under the provisions of subsection (e) above enumerated, the County Court appointed the Department of Institutions and Agencies as next friend of the two infants here involved, but that Agency did not consent to the adoption. Whether it could or not, over the objection of a competent father, it is unnecessary to decide. The fact remains that it did not consent. Without that consent or the consent of the father, the County Court had no

jurisdiction regardless of whether or not the father of the children had forsaken his parental obligations.

The judgment below is affirmed.