63 N.J. Super. 98 (1960)
164 A.2d 65
IN THE MATTER OF THE ADOPTION OF A CHILD BY J.B. AND F.B.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1960.
Decided September 26, 1960.
*100 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. John Francis Cannon argued the cause for appellants.
Respondent did not file a brief or argue.
PER CURIAM.
This is an appeal from a County Court judgment denying plaintiffs' application for the adoption of baby girl M, now two years old, awarding custody of the infant to respondent natural mother, and directing plaintiffs to return the child to her. Judgment was stayed pending disposition of this appeal. The trial court thereafter filed findings of fact and conclusions of law.
The child was born illegitimately to respondent, who is a sister of the female plaintiff, on July 12, 1958. While there was some conflict in the testimony, the trial court found that the child was placed with plaintiffs for adoption by consent of the natural mother, and we agree. Plaintiffs received custody of the child from her on October 25, 1958. Respondent was then over 21. Shortly thereafter, on November 12, respondent signed an affidavit irrevocably consenting to the adoption of the child by plaintiffs and also consenting to placing the baby in their custody. After the filing of the complaint for adoption the court entered an order setting the matter down for preliminary hearing on September 25, 1959 and directing the State Board of Child Welfare, Department of Institutions and Agencies, to make the investigation and written report required by N.J.S.A. 9:3-23(A)(4). Notice of the preliminary hearing was duly given the natural mother, the State Board promptly filed a report of its investigation into the merits of the complaint, the Mercer County Probation Department also filed a report pursuant to the order of the court, and the matter proceeded to hearing. At the hearing respondent objected to the adoption.
In addition to finding that the child had been placed for adoption by consent of the natural mother, the court found that the mother was divorced, unemployed, and had two *101 minor children for whom she received Home Aid; that the natural father was known and was not supporting the child; that the mother objected to adoption "within the time designated by statute" (not specified); that if the objection were successful the child (it was inferred) would become another public ward; that there was no evidence of unfitness in the natural mother other than the child's illegitimacy and the inference of financial inability; and, finally, that plaintiffs were "fit and able in all respects and demonstrate unrestricted solicitation for the welfare of the child to whom they offer affection and loving care."
The court then concluded as a matter of law that the mother's objection should be sustained because "seasonably made" and that neither the illegitimacy of the child nor the natural mother's financial inability made her unfit and unentitled to possession of her child. The trial court made no specific finding as to whether the adoption would be for the best interests of the child, although the investigation reports weighed very heavily in favor of the adoption; nor was there an express finding that the natural mother had abandoned the child or forsaken parental duties.
Plaintiffs seek a reversal of the judgment, contending that (1) parental consent for adoption is no longer necessary under the statute, N.J.S.A. 9:3-17 et seq., so that withdrawal of such consent is irrelevant and without legal consequence in the adoption proceedings; (2) the court erred in applying the standard of the natural mother's fitness, rather than the best interests of the child, in deciding the case, and (3) it erred as a matter of law in not concluding that parental rights had been abandoned. Respondent did not file a brief.
R.S. 9:3-4, repealed by L. 1953, c. 264, § 18, effective January 1, 1954, required that a petition for adoption be accompanied by a written consent duly acknowledged. The consent of one parent was sufficient under the repealed act if the other was dead, unknown or mentally incompetent, or his place of residence could not be ascertained notwithstanding due inquiry, or had forsaken parental obligations *102 or been divorced from the father or mother of the child. R.S. 9:3-4(c). Such consent, whether the minor child was legitimate or not, was valid irrespective of the age of the parent at the time of granting consent. R.S. 9:3-4(k).
The consent of the natural parent is no longer a statutory prerequisite to an action for adoption, where no approved agency of the State is involved. In re Jacques, 48 N.J. Super. 523 (Ch. Div. 1958). The consent provisions of R.S. 9:3-4, now repealed, have not been duplicated in the present adoption statute, N.J.S.A. 9:3-17 et seq. Parental consent is mentioned in the new statute only with respect to the surrender of a child to an approved agency for adoption, N.J.S.A. 9:2-16, 9:3-19.1, such consent being irrevocable except at the discretion of the agency or upon order or judgment of the court setting aside the voluntary surrender upon proof of fraud, duress or misrepresentation, N.J.S.A. 9:2-16. The statement attached to the repealing act, L. 1953, c. 264 (now N.J.S.A. 9:3-17 et seq.) notes that "Consents to adoption have been supplanted by investigation and report of an approved agency and review by the court at a preliminary hearing held to consider the entry of an interlocutory order," and "Under the present adoption act, written parental surrenders of custody of children for adoption purposes are recognized only when given to an approved adoption agency."
It is entirely clear from the statutory scheme and the statement accompanying the new Adoption Act that the Legislature intended to and did in fact eliminate the need of parental consent for adoption in a case like the present one. Nor do our rules, R.R. 4:112-1 et seq., setting up the procedure in adoption actions, mention parental consent under the circumstances here present. A child may be directly placed for adoption with certain relatives, including an aunt or uncle, as here. N.J.S.A. 9:3-19. When complaint for adoption is made by such a close relative, the court is required by order to (a) declare the child a ward of the court, its custody to be subject to further order; (b) appoint an *103 approved agency having its principal office in New Jersey to make an investigation and written report concerning the circumstances under which the child was received into plaintiff's home, the status of the natural parents, the potential fitness of the child for adoption, and plaintiff's potential fitness to adopt the child and to provide a suitable home for it; (c) direct that plaintiff assist fully in the investigation and report; and (d) fix a date for preliminary hearing. N.J.S.A. 9:3-23(A)(4). At such preliminary hearing the court, among other things, is to make a determination of the matters just mentioned under (b), as well as the presence of jurisdiction. Further, it is to determine from the report of the approved agency and the evidence presented whether a parent of the child sought to be adopted is dead, or mentally incompetent, or has forsaken parental obligations, or been divorced by the other parent, and in any such case may declare that such parent has no further right to the custody of the child. It may further find that the best interests of the child would not be promoted by the adoption, and accordingly deny adoption and make such further order concerning custody of the child as may be deemed proper in the circumstances. N.J.S.A. 9:3-24.
Although consent is no longer a jurisdictional prerequisite in private adoption proceedings, it may have relevance in the frame of reference of possible abandonment or the forsaking of parental obligations. Cf. Lavigne v. Family and Children's Society of Elizabeth, 11 N.J. 473 (1953). Whether the consent, or its attempted withdrawal, should be given any weight in determining if the adoption should be allowed, would depend on a variety of circumstances, such as the conditions under which the consent was originally given, the length of time between the giving and the withdrawal of the consent, the extent of reliance on the consent by the potential adoptive parents, and the development of the child while in their custody. This approach was followed in Lee v. Thomas, 297 Ky. 858, 181 S.W.2d 457 (Sup. Ct. 1954).
*104 It would appear that the trial judge reached the conclusion he did only because the natural mother objected to the adoption "within the time designated by statute," and that her objection "should be sustained since it was seasonably made." We find no time designated in the statute. He apparently labored under the misapprehension that the present Adoption Act required respondent's consent, and that the case therefore fell within the holding of In re Schulte, 14 N.J. Super. 587 (Cty. Ct. 1951), that parental consent is an essential prerequisite to an adoption, and as long as formal withdrawal of such consent is filed prior to actual judicial approval of the adoption, the application for adoption should be denied. This was error.
The trial judge never reached the question of whether the adoption would be in the best interests of the child. His findings as to the fitness of the natural mother were made solely to justify the award of the child's custody to her. There can be no question whatever that the primary concern in an adoption proceeding should be the best interests of the child. Even though the natural parent has an initial right to custody, that right is secondary to the concern of the State in promoting the welfare and best interests of the child. Lavigne v. Family and Children's Society of Elizabeth, above, 11 N.J., at p. 479; In re S, 57 N.J. Super. 154, 156 (Cty. Ct. 1959); In re Jacques, above, 48 N.J. Super., at p. 527. The statute itself clearly states that "the best interests of the child" is the standard by which adoption proceedings are to be governed. N.J.S.A. 9:3-27(C) and (D).
The matter was fully heard at the preliminary hearing fixed by the trial court. In the exercise of our original jurisdiction, we determine from the record that respondent should have no further right to the custody of the child, that the child is potentially fit for adoption, and that plaintiffs have the potential fitness to adopt the child and to provide a home suitable for her upbringing. See N.J.S.A. 9:3-25. Since plaintiffs are related to the child as uncle *105 and aunt, respectively, the trial court could have dispensed with the appointment of a next friend, as provided in N.J.S.A. 9:3-25, and proceeded immediately with final hearing pursuant to N.J.S.A. 9:3-27. We shall do so.
The record gives firm support to our conclusion that it would not be in the best interests of the child to return her to the custody of respondent, the natural mother. The child is now two years old and has been living with the prospective adoptive parents for as long as she could possibly have recollection of parental care. Plaintiffs, as the trial court found, are devoted and loving parents. Mrs. B. operates a beauty shop and Mr. B. is in the state service. These employments produce a joint annual income of some $8,000. In addition, Mr. B. operates a small tailor shop averaging a weekly gross income of $35. Plaintiffs maintain savings accounts and a checking account, carry insurance, and own a neat and attractive home in a residential neighborhood. Mr. B. is a college graduate, concededly of marked intelligence.
The natural mother, on the other hand, lives with two children by a previous marriage, aged eight and seven, whom she apparently leaves with neighbors quite frequently while she is away from the home. Indications are that she is either unable or unwilling to devote a full measure of parental care to these two children, let alone the third, the child sought to be adopted. The putative father of the child is presently married to another woman, by whom he had a child sometime before the marriage. The reports indicate that he is still seeing respondent. The Probation Department in January 1960 reported a rumor that respondent was pregnant at the time of its investigation, although she denied this to the probation officer. At the oral hearing there was presented to the court a certificate issued by the Trenton Bureau of Health, Division of Vital Statistics, showing that respondent had given birth to a child, father not named, on July 30, 1960.
The general welfare and best interests of the child dictate that the adoption be granted. The judgment below is therefore *106 reversed with the direction that the County Court enter a judgment in conformity with the conclusions herein expressed.