108 N.J. Super. 531 (1970)
262 A.2d 4
IN THE MATTER OF THE GUARDIANSHIP OF B.C.H.
BUREAU OF CHILDREN'S SERVICES, PETITIONER-RESPONDENT,
v.
A. and M.H., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 19, 1970.
Decided February 17, 1970.
*534 Before Judges KILKENNY, LABRECQUE and LEONARD.
Somerset County Legal Services Corp., for appellants (Mr. Francis T. Gleason, Jr., on the brief).
Mr. Arthur J. Sills, Attorney General, for respondent (Mr. Eugene T. Urbaniak, Deputy Attorney General, of counsel).
The opinion of the court was delivered by LEONARD, J.A.D.
This is a proceeding for guardianship instituted by the Bureau of Children's Services (Bureau) pursuant to N.J.S.A. 30:4C-15(c). Defendants, parents of the child, appeal from a judgment of commitment, dated May 2, 1969. This judgment committed the child to the guardianship of the Bureau, terminated the parental rights between the child and defendants for all purposes, and gave the right to the Bureau, as guardian, to consent to the adoption of the child.
Defendants were married on February 6, 1967 and the infant was born on February 7, 1968. Defendants, father and mother, are presently 22 and 20 years of age, respectively.
The events leading to this litigation began on or about March 17, 1968. On that day the parents took the child to the Raritan Valley Hospital where it was discovered that he had fractures on both sides of his skull, the one on the left side pre-existing the one on the right. The parents gave several varying accounts of the injuries to Captain Kulpak of the Middlesex Borough police, who learned of the event from the county prosecutor's office. At first, they stated that the child fell out of a chair to cause one fracture and then *535 three weeks later fell against the side of the crib. Finally, the parents told him their present version that the mother had the child in her arms and as she bent over to get a bottle from the bottom shelf of the refrigerator, the baby's head struck the side of the gas range. The father came into the room and asked what happened, became angry, and tried to hit his wife who dodged the blow and he hit the baby on the other side of the head.
Captain Kulpak contacted the Bureau. When the child was discharged from the hospital the Bureau, at the parents' request, provided supervisory service in the parents' home. Thereafter, suspecting child abuse, the Bureau prevailed upon the parents, on May 3, 1968, to sign a written authorization to place the child in foster care. Such a placement was made. However, on November 20, 1968, at the conclusion of a visitation at the Bureau office, defendants physically took the child with them and revoked their previous consent.
On the same date the Bureau filed a petition for guardianship under N.J.S.A. 30:4C-15(c) and also an application under N.J.S.A. 30:4C-17 for an interlocutory order of commitment. An appropriate interlocutory order was entered and the child was returned to a foster home where he has remained.
The trial commenced on January 2, 1969. Only Dr. James Starrels, Director of Psychotherapy at the New Jersey Psychiatric Institute, testified on that day. The matter was continued from time to time until May 2, 1969, when the remaining witnesses testified and the matter was concluded. The court awarded guardianship of the child to the Bureau. Defendants moved for a judgment notwithstanding the verdict, following the denial of which they appealed. Pending appeal the trial court entered a stay of that portion of the judgment which permitted the Bureau to place the child for adoption.
Defendants first contend that the adjournment of the final hearing for more than 90 days without their consent was contrary to the express provisions of N.J.S.A. 30:4C-19. *536 Therefore, they urge that the Bureau lost its power to proceed and the court ceased to have jurisdiction to terminate parental rights. N.J.S.A. 30:4C-19 provides, "Adjournment of any hearing on a petition filed under section fifteen hereof shall not exceed a total period of ninety days."
The matter was adjourned from January 2, 1969, with the consent of defendants and the Bureau, because it appeared to the court that more time would be required for the hearing than had been originally planned. The matter was subsequently relisted for February 20, February 21 and March 14. It was finally heard on May 2, 1969, 120 days after the initial hearing. Although the record does not disclose that defendants consented to the last three adjournments, it does show that defendants' trial counsel was advised of each and voiced no objection. As a matter of fact, defendants did not raise this point below until April 21, 1969 when they served notice upon the Bureau that they would move on May 2, 1969 (the matter having been previously set down for a hearing on that day) for a dismissal of the petition for the reason now asserted.
In any event, we hold that the words "shall not" as used in the above-cited statute are directory only rather than mandatory. See Jersey City v. State Board of Tax Appeals, 133 N.J.L. 202, 210 (Sup. Ct. 1945), modified on other grounds. Jersey City v. Kelly, 134 N.J.L. 239, 240, (E. & A. 1946). Here, the court, in the first instance, had jurisdiction over the subject matter and the parties. The record does not indicate that the Bureau or defendants were responsible for the delay. We are certain that in using these words the Legislature did not intend that the mere failure of the court to observe the statutory time limit dissipated the Bureau's power to proceed and the court's jurisdiction. To so hold would open the door to miscarriages of justice. Id., at 210. Thus, this contention has no merit. Cf. Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 391-393 (1959); In re Munson-Lied Co., 68 N.J. Super. 281, 287-288 (App. Div. 1961).
*537 Defendants basically contend that the Bureau failed to establish by clear and convincing proof that one or both of the parents were unfit and that the unfitness was permanent. In evaluating the validity of this contention we must keep in mind that we are not reviewing an order for custody, which is always subject to modification in the light of future circumstances. Rather, we are concerned with an order for adoption which will permanently sever defendants' parental rights. It is elementary that deeper and broader considerations are commanded in adoption proceedings than in cases where custody alone is the issue. In re N., 96 N.J. Super. 415, 423 (App. Div. 1967). Normally and logically, the blood relationship should be continued in the absence of parental consent unless and until the proposed adopters clearly and convincingly establish the unfitness of the opposing parent or some other reason that would justify a judicial finding that the child's best interest would be served by the adoption. Such an action [adoption] is of the first magnitude and should be sanctioned only after serious consideration of the consequences. The child's relationship with the parent is of such significance that all doubts are to be resolved against its destruction. Id., at 423-425.
The statute, N.J.S.A. 30:4C-1 et seq., 15, 15(c), under which the Bureau is proceeding, is to be administered strictly in accordance with the general principle that the preservation and strengthening of family life is a matter of public concern as being in the interest of the general welfare of the child. In re Cope, 106 N.J. Super. 336, 340 (App. Div. 1969). The rights of the child's natural parents are essential factors for judicial consideration and the welfare of a child is inextricably bound up with the rights of the parents. Id., at 340.
The only expert testimony in the case was supplied by Dr. Starrels, who examined only the father on June 13, 1968. He testified on January 2, 1969 and based his opinion as to the father's "long-standing and frequent aggressive and violent acts" on his examination of that date, certain clinical *538 tests made at the time, and a report of the New Jersey Diagnostic Center, dated November 1965. The court rendered its opinion on May 2, 1969, some four months after the doctor testified and about 10-1/2 months after his examination.
Although Dr. Starrels, on direct examination, stated that the father's condition did not hold much promise of "modification," he did admit on cross-examination that it was possible that some change had taken place between 1965 and the date of his examination and even since then. He conceded that it would be possible for this man to improve if he would show a willingness and assume some responsibility for himself. The doctor also admitted that drugs might aid him and that the possible loss of his child might have a sobering effect on him. Miss Charlene Koenig, a caseworker for the Bureau, testified that defendants have been living in the same house since September 1968; they have had no marital difficulties since then and the marriage is "more stable now."
In view of the time that expired between the date of the doctor's examination and the court's determination, and the possibility of improvement in the condition of the father in the interim, we are hesitant to sever his parental relationship with his son without first ascertaining his present condition. Consequently, inquiry should be made as to whether his condition has improved since the last examination or whether it is probable that it will improve within a reasonable period of time. Only then can it be established that he currently remains or probably will remain a danger to the physical safety of his son. This information should be secured by having the father re-examined by Dr. Starrels or some other competent psychiatrist.
Turning to the mother, no expert testimony was offered as to her condition. Rather, the court relied upon a confidential report made by the Bureau which contained an opinion of one Dr. Michael Mendelson, based upon an alleged examination made on May 13, 1968, that she had *539 a "passive-dependent personality." She, too, should be examined by a competent psychiatrist.
The burden being upon the Bureau to establish the parents' present unfitness, In re N., supra, 96 N.J. Super., at 424, we direct the Bureau to arrange for these examinations forthwith. Further, the Bureau shall make a current investigation of defendants' home environment, their marital relationship and the father's work record. Additionally, defendants may arrange for a timely examination by their own physician.
In view of the above-mandated examinations and investigations, we are of the opinion that this matter should be remanded to the trial court for a further hearing. Therefore, the trial court shall, as soon as practicable, confer with counsel in open court and, consistent with the time required for the completion of the examinations and investigation, fix a firm date for the remand hearing.
At the hearing the Bureau shall first offer its medical and lay testimony. Defendants may then offer pertinent rebuttal testimony. The right of cross-examination is preserved. Each counsel shall give his adversary a copy of his medical reports at least ten days in advance of the hearing.
Upon the completion of all testimony the trial court shall make and file supplemental, specific findings of the present condition of both parents, the probability of improvement of each, and the relationship of these findings to the critical issue of whether there presently exists or will exist in the reasonable future a danger to the physical safety of the child if he is allowed to remain with defendants.
We return to a consideration of the Bureau's confidential report which the trial court utilized in reaching its conclusion as to the mother's condition. This report was not received in evidence and defendants had no prior knowledge of it or its contents until the court referred thereto in its "Statement of Reasons For Determination." We direct that the Bureau immediately supply defendants with a copy of this report. Additionally, at the remand *540 hearing the report should be marked in evidence and the court and defendants should proceed with reference thereto in the manner set forth in In re Cope, supra, 106 N.J. Super., at 343-344.
Pending our final disposition, the stay granted by the trial court shall be continued.
Remanded to the trial court for a hearing in accordance herewith. Jurisdiction retained.