175 N.J. Super. 420 (1980)
419 A.2d 1135
IN THE MATTER OF THE ADOPTION OF TWO CHILDREN BY J.J.P., PLAINTIFF-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1980.
Decided June 19, 1980.
*423 Before Judges MATTHEWS, ARD and POLOW.
Vincent L. Robertson argued the cause for plaintiff-appellant (Tomar, Parks, Seliger, Simonoff & Adourian, attorneys).
Fred R. Ball argued the cause for defendant-respondent (Hartman, Schlesinger, Schlosser and Faxon, attorneys).
The opinion of the court was delivered by POLOW, J.A.D.
Plaintiff stepfather appeals from the determination of the trial court denying his request to adopt the children of his present wife over the objection of her former husband, the children's natural father. Plaintiff's wife consented and urged the court to permit the adoption. Defendant, the children's natural father, counterclaimed for custody or, in the alternative, reasonable visitation rights.
The natural parents were married in Indiana in 1970 and continued to reside in that state for about six years. Two *424 children were born of the marriage, a daughter in March 1971 and a son in November 1973. Having encountered marital difficulties, the parties separated in July 1975. It was shortly thereafter, in September 1975, that plaintiff met his present wife, the children's mother.
For several months after the separation, the natural father remained in Indiana and visited with his children fairly regularly. An Indiana divorce judgment, dated December 23, 1975, provided for custody in the mother and gave defendant the right to visit his children on Sunday afternoons and overnight visitation privileges two weeks a year. The children were not to be relocated to any place more than 100 miles from Bremen, Indiana, their home town.
In March 1976 defendant accepted a transfer of employment which required him to move to North Carolina. His former wife refused his request to permit his parents to exercise his visitation rights. Instead, she sought his consent to removal of the children to New Jersey but he refused. Nevertheless, the former wife obtained an ex parte order, without notice to defendant, allowing her to remove the children on the basis of an alleged emergency. In support thereof, her petition merely recited that her former husband left Indiana for employment in North Carolina, that she intended to marry a man who resides and works in New Jersey and that she "must move forthwith." The former wife ultimately married plaintiff on November 14, 1976.
Upon defendant's application for review of the previous ex parte order, the Indiana court scheduled a hearing for May 27, 1976 and required the former wife and children to be present. Her attorney appeared and obtained a postponement until August 1976 upon the representation that they would be in Indiana at that time. However, neither the former wife nor the children appeared as promised. Consequently, she was adjudged in contempt.
Defendant telephoned his former wife to obtain permission to visit his children in New Jersey. He was permitted to spend several hours with the children in the presence of his former *425 wife and her present husband, the plaintiff. Defendant continued telephone communications with his children for a time after he moved back to Indiana in August 1976. However, he was unable to reach his former wife or the children after November 1976. Apparently her phone number had been changed and he was not able to obtain her new, unlisted number.
Defendant retained counsel in New Jersey and wrote to his former wife in December 1976 stating, "I do not wish to make trouble for you, only to have a satisfactory visitation agreement.... He also expressed his intention to do whatever was necessary to see his children. At some time in 1977 defendant ceased payments of the $40 a week support to the probation department in Indiana and instead deposited the funds in a bank account. However, at a subsequent hearing, the Indiana court required him to deposit all of the funds with the county clerk.
In December 1977 the paternal grandparents obtained the address of the grandchildren and thereafter sent the children Christmas, birthday and Valentine's cards. There was testimony that no such cards were received. Defendant also learned of his children's home address in or about mid 1978. He testified that he asked his parents to send cards on his behalf since he felt there would be a greater likelihood of response it if were handled in that manner.
Although the former wife visited Bremen, Indiana, on at least two occasions after September 1976, she did not get in touch with defendant or his parents. She admitted that she did not want the children to have a good relationship with their natural father and made no effort to encourage such a relationship. Defendant continued to discuss the visitation problem with his Indiana attorney during 1978 and 1979 without positive results. He has maintained savings plans and insurance policies for both children and they are named as beneficiaries in his will.
The trial judge found that defendant had complied with all support orders. Recognizing the fact that defendant had not seen his children in more than three years, the judge found that the former wife had improperly kept the children out of Indiana and unfairly thwarted defendant's efforts to visit with his *426 children. Plaintiff's complaint for adoption was denied and custody was continued in the natural mother. However, the judge refused to deal with the controversy over visitation rights because the pleadings did not clearly state the issue.
In that regard we disagree with the trial judge. Visitation is an issue inherently related to custody. Any court which deals with custody has inherent jurisdiction to resolve disputes over visitation rights. See, e.g., Sorentino v. Family and Children's Society of Elizabeth, 74 N.J. 313, 322-323 (1977). The issue should be dealt with expeditiously in the interest of the children involved and to prevent continued estrangement from natural parents where the right to visit exists. Thus, defendant's visitation privileges should have been fairly and reasonably dealt with, together with imposition of appropriate guarantees to assure compliance on both sides.
Plaintiff's argument on appeal, as it was in the trial court, is simply that the adoption should be granted and defendant's parental rights terminated because the natural father has failed to perform his regular and expected parental functions of "care and support" and has substantially neglected his parental duties. We find no basis in the record to support the proposition suggested by plaintiff and conclude that he has misconstrued the purport and intent of the adoption statute. N.J.S.A. 9:3-37 et seq.
Our courts have long recognized and continued to emphasize the sanctity of the natural parent-child relationship. See Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 1090 (1944). Termination of parental rights is an extraordinary judicial remedy which will be granted only after intensive consideration of parental misconduct and, if appropriate, the welfare of the child. In re N., 96 N.J. Super. 415, 423-424 (App.Div. 1967). Judicial caution in terminating parental rights is of the essence due to the permanent and irreversible nature of such a determination. Ibid. The new adoption statute, effective March 8, 1978, N.J.S.A. 9:3-37, provides no indication that the Legislature intended to modify or dilute previous judicial pronouncements in that regard.
*427 Absent consent by both natural parents, adoption may not be granted unless the court finds "intentional abandonment or very substantial neglect of parental duties without a reasonable expectation of a reversal of that conduct in the future." N.J.S.A. 9:3-48(c)(1). Under the prior adoption statute, a similar finding was required although it was worded somewhat differently. N.J.S.A. 9:3-18(d) prohibited an adoption award terminating the rights of a natural parent without a finding that such natural parent has "forsaken parental obligations" by wilful and continuous neglect or failure to perform the natural and regular obligations of care and support of a child. That statutory language was construed by our Supreme Court to require a "past course of conduct amounting to intended abandonment or very substantial neglect of both parental duties and claims, with no reasonable expectation of any reversal of that conduct in the near future." In re Adoption of Children by D., 61 N.J. 89, 94-95 (1972).
In re D., supra, leads to the inevitable conclusion that the recent adoption statute codified the requirement that there must be, in addition to past intentional abandonment or substantial neglect, an absence of a reasonable expection of a reversal of that conduct in the furture. By adopting the policy statement enunciated by In re D., the Legislature has recognized that a court must act with great caution and circumspection where a natural parent refuses to consent to a proposed adoption in a situation, such as this, involving divorced parents. The nonconsenting natural parent is threatened with permanent termination of all parental rights and benefits, including the privilege of visiting his children, as if they were never his and, perhaps more significantly, the children would be forever deprived of all contact with and benefit from their parent except the right to inherit.
Adoption is distinguished from custody in that it is immutable and permanent - not subject to alteration based upon changed circumstances. In re D., supra, 61 N.J. at 93. The award of a judgment of adoption "is of the first magnitude and should be sanctioned only after serious consideration of the consequences ... The child's relationship with the parent is of such *428 significance that all doubts are to be resolved against its destruction." In re N., supra, 96 N.J. Super. at 425 (emphasis supplied).
It is also evident that the Legislature intended to incorporate the principle enunciated by the Supreme Court, that in a stepparent adoption application opposed by a divorced natural parent, if intentional abandonment or very substantial neglect without reasonable expectation of reversal in the future has not been established by the evidence, the rights of a natural parent may not be terminated; adoption must be denied at that point and the case should proceed no further. In re D., supra, 61 N.J. at 94-95. In a divorced parent situation where the child has remained with one natural parent, it then becomes unnecessary to consider whether "the best interests of the child" would be promoted by the adoption. Id. at 95. The relationship between a child and his noncustodial natural parent is so strong and of such significance that all doubts must be resolved against its destruction. In re N., supra, 96 N.J. Super. at 423-424.
At the trial in the Law Division the only witnesses offered were plaintiff, both natural parents and the paternal grandparents. The evidence is devoid of any support for the conclusion that defendant has demonstrated a course of conduct amounting to intended abandonment or very substantial neglect of parental duties and claims. Although defendant could have pursued his right to develop a relationship with his children more vigorously, it is beyond dispute that he was frustrated in his attempts by the intentional behavior of his former wife to prevent him from continuing and improving his relationship with his children. Furthermore, his continued financial support and concern for the future economic welfare of the children and his vigorous pursuit of this action lead to the inescapable conclusion that any previous conduct indicating less than vigorous pursuit of his parental rights has been substantially reversed.
It is apparent that there are strong emotional cross-currents involved. Although the children do not clearly recall their natural father, one of them indicated awareness of his existence. They both call plaintiff "dad" and consider him to be their *429 father. Under the circumstances, it is obvious that counsel for the litigating parties are adversaries whose primary allegiance must be to the cause espoused by their clients, plaintiff stepfather and defendant natural father. The children are clients of neither of them. However, they are the center of the controversy and were entitled to independent counsel who, in protecting their welfare and interests, could be objective with regard to the issues and contentions of the parties. Our courts have inherent power to appoint a guardian ad litem for a minor, R. 4:26-2, and the desirability of the exercise of such power is recognized in our decisions. In re N., supra, 96 N.J. Super. at 427-428. We are satisfied that the circumstances involved in this contested adoption proceeding justified the appointment of independent counsel to act as guardian ad litem on behalf of the children.
In view of the ultimate determination denying the demand for adoption, which we affirm, and there having been no proofs relating to nor consideration of the "best interests" issue, we perceive no harm in the failure to appoint counsel for the children. Counsel neither presented any evidence in support of nor argued the proposition that termination of defendant's parental rights would promote the best interests of the children.
On the issue of the "best interests of the children," we note that it has been increasingly evident that a psychological relationship may develop between children and a stepparent. However, the denial of plaintiff's demand for adoption need not have an adverse psychological effect on the children. They will remain where they are and thus are not deprived of the emotional attachment which may have developed with their stepfather. Hence, there need be no concern for the "potentiality of serious psychological injury" which might result from removal from their present home and possible "drastic change in . . life circumstances," as in Sees v. Baber, 74 N.J. 201, 222 (1977), or in Sorentino v. Family & Children's Society of Elizabeth, 72 N.J. 127, 131-132 (1976). Any adverse emotional consequences possibly related to future contact with defendant is purely speculative and is outweighed by the ultimate undesirability of permanent destruction of the potential relationship between the children and their biological father. Hence, plaintiff's petition *430 to adopt his step-children was properly rejected, even under best interests considerations.
Instead of dealing with the visitation problem, the trial judge suggested filing a new action in the Chancery Division. We were advised at oral argument that such an action has been instituted but that the court stayed any further proceedings pending the outcome of this appeal. We are fully satisfied that defendant is entitled to visitation privileges, a right universally recognized for the benefit of a noncustodial parent. Absent serious wrong-doing or unfitness, the right of visitation is strong and compelling. Daly v. Daly, 39 N.J. Super. 117, 123 (J. & D.R. Ct. 1956), aff'd 21 N.J. 599 (1956); Hoy v. Willis, 165 N.J. Super. 265, 275-276 (App.Div. 1978). Visitation rights are enforceable even independently of the support obligation. Daly v. Daly, supra; Hallberg v. Hallberg, 113 N.J. Super. 205, 209 (App.Div. 1971). Hence, the matter is remanded and transferred to the Chancery Division for immediate consideration of an order providing visitation privileges for defendant with guarantees to assure compliance by all parties with the terms thereof. We will not retain jurisdiction.
Affirmed and remanded.