165 N.J. Super. 265 (1978)
398 A.2d 109
ADELE HOY, PLAINTIFF-APPELLANT,
v.
DEBRA WILLIS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1978.
Decided December 21, 1978.
*267 Before Judges FRITZ, BISCHOFF and MORGAN.
*268 Mr. Richard D. Barker, Hunterdon County Legal Service, Corp., argued the cause for appellant.
Mr. Bruce D. Herrigel argued the cause for respondent (Messrs. Herrigel & Alexander, attorneys).
The opinion of the court was delivered by BISCHOFF, J.A.D.
The sole issue in this appeal is whether a child six years of age should remain in the custody of his foster mother, a paternal aunt with whom he was voluntarily placed at the age of 1-1/2 years by his biological mother, or whether his custody should be awarded to the biological mother.
The facts are basically undisputed. On July 17, 1970 defendant Debra Willis married George H. Willis. They had three children: Jody, born September 11, 1970, and twins, George H. Jr. and Tina, born December 27, 1972. George and Debra separated in November 1973. George Jr. and Tina were placed separately in the custody of two paternal aunts in April 1974 for several weeks. In June 1974 defendant placed George Jr. with plaintiff Adele Hoy because defendant was on the verge of a nervous breakdown. Tina at that time was placed with a paternal uncle. On August 8, 1974 defendant executed a "right to custody" document which gave custody of George Jr. to plaintiff. While the parties dispute the reason for and the significance of that document, it is unimportant to the ultimate determination of this case.
In November 1975 defendant was hospitalized with a nervous breakdown. This was followed by a period of depression due to marital problems. There were subsequent hospitalizations for physical and psychological disorders. Defendant was divorced from George, moved to Rhode Island and remarried.
Defendant visited George Jr. once in the autumn of 1974 and briefly in March and July 1976. Other than these three visits, defendant did not see or communicate with *269 George Jr. from the time of his placement with plaintiff in June 1974 until January 1978.
At the time of defendant's visit in July 1976 she took Tina back to Rhode Island with her and has since been awarded custody of Tina by the Rhode Island Family Court. Shortly thereafter, on October 6, 1976, plaintiff filed a complaint in the Juvenile and Domestic Relations Court in New Jersey seeking an award of temporary custody of George Jr. Defendant did not appear at the hearing and by order of the court, dated November 8, 1976, plaintiff was awarded custody of George Jr. until he "shall attain the age of 18 years or the further direction of the court."
Passing intervening proceedings not now relevant to this appeal, a hearing held in January 1978 resulted in the entry of an order dated January 12, 1978, (1) making George Jr. a ward of the court pursuant to N.J.S.A. 30:4C-12; (2) awarding temporary custody of George Jr. to the Division of Youth & Family Services (DYFS) and his physical custody to Lelia Willis, a paternal grandmother; (3) ordering a psychiatric examination and testing of George Jr. to determine whether the "removal of [George] from the home of plaintiff would be detrimental to his psychological well-being;" (4) ordering that George Jr. not be removed from New Jersey, and (5) ordering that the natural parents pay for his support and maintenance.
Thereafter the attorneys for the parties met with the trial judge and agreed to select the psychiatrist who would perform the psychiatric examination and testing, and agreed to share in the cost thereof.
The parties have stipulated that defendant has completely recovered from her breakdown, that the parties are equally fit to care for the child and that there is no evidence or allegation of abandonment of the child by the mother.
The case was tried August 2, 1978 and the foregoing facts were developed either by testimony or stipulation.
The only expert witness to testify was Dr. Hollander, a psychiatrist, who had examined and tested George Jr. at the *270 request of the attorneys for plaintiff and defendant. He had also interviewed plaintiff and defendant. It was his opinion that, as a result of George Jr. having lived with plaintiff for over four years, she had become his psychological mother and removing him from her care would cause profound psychological complications and constitute a major upset in the continuity of his life. The effect of a transfer in custody at this time would be traumatic and would result in a marked regression in behavior, depression, anxiety and anger requiring professional therapy. When asked how long these effects would continue, he replied that he was not certain George would ever recover and said, "Certainly it would take at least 7 years for him to come back to equal balance." Dr. Hollander said that George Jr. recognized defendant as his biological mother but that the relationship had no meaning for him. His psychological ties were all with plaintiff. It was his considered opinion that George Jr.'s development and best interests would be served by continuing his custody in plaintiff. This was the only expert testimony in the record.
The trial judge rejected the opinion of Dr. Hollander, apparently in large part because of the doctor's response to a hypothetical question put to him by the court. That question was:
If a couple kidnapped an infant, kept it for four years, and within that four years they became the psychological parents of the child and if both the parents and the kidnappers were equal in all respects would it be in the best interest of the child to continue custody with the kidnappers?
Dr. Hollander answered that question in the affirmative. In a letter opinion dated September 5, 1978 the trial judge, in commenting on this answer of the doctor, said:
This Court finds it impossible to accept this line of reasoning. Unfortunately the court must either disbelieve the only expert opinion before it or by accepting it, decide that as a matter of law, the best interest of the child must give way to the rights of the parent to custody of her child.
*271 The trial judge stated that the family unit would be preserved by reuniting George Jr. with defendant. He expressed concern that the application of the theory of "psychological parent" in effect would
[C]onvert all temporary custody matters into adoption or permanent custody situations, with or without the termination of parental rights. Under the plaintiff's theory once a "psychological parent" other than the biological parent has been established, the child ought not be taken from the psychological parent as long as he or she maintains that position. This, in essence, is the position of an adopting parent and, for all practical purposes terminates parental rights. Parents who need help caring for their children, whether because of physical, emotional or economic strain or distress will be relictant [sic] to seek aid for the children if it becomes apparent that once given up, a child will never be returned.
* * * * * * * *
Since this Court has not been satisfied as to the degree or extent of possible harm to George Jr., custody is awarded to his natural mother, Mrs. Debra Willis. * * *
An order was entered October 13, 1978 awarding custody of George Jr. to his natural mother, the defendant. This court stayed execution of that order pending this appeal.
We now approach the resolution of this appeal with full awareness of the immediate and long-term impact our decision may have on the lives of George Jr. and the parties to this litigation. We have a deep appreciation of the sensitive and emotional issues involved. Smith v. Organization of Foster Families, 431 U.S. 816, 833, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). Moreover, we agree with the trial judge that the establishment and maintenance of a biological family unit is a matter for legitimate concern when a court must resolve a question of custody. See N.J.S.A. 30:4C-3. However, this should not serve as a presupposed end for which justification is sought and indeed it must yield when, as here, it conflicts with the best interests of the child.
While the trial judge properly recognized the issue presented as that of whether George Jr.'s best interests would be served by continuing custody with plaintiff or transferring *272 his custody to the defendant, he failed to recognize the extent to which the law has accepted the theory of psychological parentage in resolving that issue. By that failure the trial judge did not adequately apply the principle to the facts.
Courts have traditionally been reluctant to deny a parent custody of his or her child. In re Mrs. M., 74 N.J. Super. 178 (App. Div. 1962). However, when the best interests of the child will clearly be served by a custody award to a third party, a finding of either parental unfitness or abandonment is not a prerequisite to the entry of an order doing so. S.M. v. S.J., 143 N.J. Super. 379 (Ch. Div. 1976).
It is now well recognized that there is a serious potential for psychological harm occurring to young children if they are removed from a home where they have lived and been nurtured during their early years by loving and devoted parents, albeit foster parents. Sorentino v. Family & Children's Soc. of Elizabeth, 72 N.J. 127, 132 (1976) (Sorentino I). And, where that potential appears, "the court cannot evade its responsibility as parens patriae of all minor children to preserve them from harm." Indeed the possibility of serious psychological harm to the child may in a case such as this transcend all other considerations. Id. at 132.
That there can be a psychological parent-child relationship between a child and someone other than the child's biological parent is well recognized in the literature on the subject. Biological relationships are not an exclusive determinate of the existence of a family. Smith v. Organization of Foster Families, supra, 431 U.S. at 843, 97 S.Ct. 2094. In Sees v. Baber, 74 N.J. 201 (1977), the court said:
It has been recognized that the psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood. Goldstein, Freud and Solnit, Beyond the Best Interests of the Child (1973); see also, Bowlby, Attachment and Loss, (Vol. I, 1969; Vol. II, 1973); Note, "Alternatives to `Parental Right' in Child Custody Disputes Involving Third Parties," 73 Yale L.J. 151 (1963); Comment, 26 Rutgers *273 L. Rev. 693 (1973); and see, Note, 3 Seton Hall L. Rev. 130, 140 (1971). [at 222]
The factors involved in the creation of the psychological parent-child relationship and the nature of this bond are described by Goldstein, Freud and Solnit in Beyond the Best Interests of the Child (1973), in the following terms:
The child's psychological tie to a parent figure is not the simple, uncomplicated relationship which it may appear to be at first glance. While it is rooted inevitably in the infant's inability to ensure his own survival, it varies according to the manner in which protection is given and the physical needs fulfilled. Where this is done impersonally and with routine regularity as in institutions, the infant may remain involved with his own body and not take an alert interest in his surroundings. Where the adult in charge of the child is personally and emotionally involved, a psychological interplay between adult and child will be superimposed on the events of bodily care. Then the child's libidinal interest will be drawn for the first time to the human object in the outside world.
Such primitive and tenuous first attachments form the base from which any further relationships develop. What the child brings to them next are no longer only his needs for body comfort and gratification but his emotional demands for affection, companionship, and stimulating intimacy. Where these are answered reliably and regularly, the child-parent relationship becomes firm, with immensely productive effects on the child's intellectual and social development. Where parental care is inadequate, this may be matched by defects in the child's mental growth. Where there are changes of parent figure or other hurtful interruptions, the child's vulnerability and the fragility of the relationship become evidence. The child regresses along the whole line of his affections, skills, achievements, and social adaptation. It is only with the advance toward maturity that emotional ties of the young will outgrow this vulnerability. [at 17]
* * * * * * * *
Whether any adult becomes the psychological parent of a child is based thus on day-to-day interaction, companionship, and shared experiences. The role can be fulfilled either by a biological parent or by an adoptive parent or by any other caring adult  but never by an absent, inactive adult, whatever his biological or legal relationship to the child may be. [at 19; emphasis supplied]
*274 Recent Supreme Court cases give full recognition to this principle.
In Sorentino I, supra, the natural mother of an illegitimate child sought an order directing that custody of her child be returned to her. The child, when less than one month of age, had been placed with foster parents for adoption and left with them without interruption for almost three years. The court refrained from directing a return of the infant to its biological mother without some factual inquiry assisted by expert testimony as to any discernible or demonstrable impact such a move might have upon the child. Sorentino I, supra, 72 N.J. at 133; see also, Sees v. Baber, supra 74 N.J. at 221. After remand to the trial court and the conduct of a plenary hearing, the trial judge concluded that the child would suffer psychological harm if custody were transferred from the foster parents to the natural mother. That finding was affirmed, Sorentino v. Family & Children's Soc. of Elizabeth, 74 N.J. 313 (1977) (Sorentino II), and the court's observations are particularly relevant here:
Plaintiffs' final argument is that the trial judge's conclusion that the child would be harmed by a transfer of custody to his natural parents is contrary to the weight of the evidence. Quite the opposite is true. The overwhelming evidence, including the testimony, the medical and scientific authorities, and the legal literature on the subject, supports the trial court's conclusion. One excerpt from the judge's findings referring to the testimony of defendants' experts, which, as noted, he found "persuasive and convincing," is sufficient to dispose of plaintiffs' contention:
They were unanimous in their opinion that if transfer of custody were ordered, it would not only be beset with immediate serious psychological and emotional harm to the child, but that also there was a strong likelihood and a potential for such harm to continue throughout her lifetime, characteristics being that the child would suffer acute depression, act out with rebellious conduct and suffer feelings of anxiety, fearfulness, insecurity and inadequacy.
They further agreed that although professional help is available, at most it would only ameliorate the harm but would not eradicate it. [at 320]
*275 In Sees v. Baber, supra, an unmarried mother surrendered her child for adoption three days after birth. Two days later she changed her mind and sought to revoke the consent to adoption. Within the month the biological mother instituted an action in chancery seeking the immediate return of her child. The foster parents with whom the child had been placed, by counterclaim, sought an award of custody urging the theory of psychological parentage. The case came before the Supreme Court when the child was slightly less than one year old. The court recognized the existence and importance of the principle of psychological parentage but refused to apply it in that case because (1) the separation of the child from her biological mother was for only one year immediately after birth, which period the court concluded was too brief to create a psychological bond between the infant and the foster parents, and (2) the child was too young to permit effective psychological examination and testing. Id., 74 N.J. at 222.
The trial judge here expressed the opinion that the acceptance of the principle of psychological parentage between a child and someone other than the biological parents would, for all practical purposes, be permanent in nature and effectively terminate parental rights. This is not necessarily so. In Sorentino II, supra 74 N.J. at 323, it was pointed out that even where a psychological parentage with someone other than the biological parent has been established and parental rights have not been terminated, the maintenance of an existing relationship between the biological parent and the child is to be encouraged with the hopeful expectation that the natural parent will in the future be able to resume permanent custody of the child.
As the child matures and develops it is to be expected that visitations with a biological parent may be permitted to increase in frequency and duration without impairing the development and well-being of the child. Orders respecting custody and visitation are subject to modification at any time upon a showing of a material change in circumstances. *276 Mimkon v. Ford, 66 N.J. 426, 438 (1975); Scanlon v. Scanlon, 29 N.J. Super. 317, 327 (App. Div. 1954). At all times the best interests of the child should be the guiding principle and the paramount considerations are the child's safety, happiness and mental, physical and emotional welfare. Fantony v. Fantony, 21 N.J. 525, 536 (1956).
The only relief sought here is temporary custody. Plaintiff does not seek termination of parental rights nor the right to apply for the adoption of George Jr. In these instances an entirely different complex of statutes, legal principles and a more stringent burden of proof are applicable. Sees v. Baber, supra 74 N.J. at 210; Sorentino II, supra 74 N.J. at 321; see also, In re Guardianship of R.G. & F., 155 N.J. Super. 186 (App. Div. 1977).
Defendant has argued that as the biological mother of George Jr. she has a natural right to his custody. Putting to one side the overriding interests of the court as parens patriae of all minor children, Sorentino I, 72 N.J. at 132, it is undisputed that the lodgment of George Jr. outside defendant's home was at defendant's initiative. This is not said in any deprecating or accusatory sense. It simply states the fact. Defendant's placement in 1974 and her failure for several years thereafter to seek a return of George Jr. enabled him to develop an attachment to plaintiff which cannot now be ignored or terminated if the best interests of the child are to be protected and advanced. We assume defendant acted in what she believed were George Jr.'s best interests at the time of the original placement, as well as when she refrained from seeking his return for the time period involved.
It is clear to us that the trial judge failed to recognize and apply present-day concepts of psychological parentage in resolving the custody issue before him. We would normally remand a case of this nature to the trial judge for reconsideration and the application of appropriate legal principles. We are persuaded, however, to exercise our original jurisdiction, R. 2:10-5, make our own findings and *277 bring the litigation to a conclusion for two reasons. First, the litigation involves the custody of the very young and has already been pending without resolution entirely too long. Second, since the evidence is virtually undisputed, the observation of a trial judge on matters of credibility and demeanor are not of crucial significance. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 485 (1974); State v. Johnson, 42 N.J. 146, 162 (1964).
Turning to the record presented here, the only evidence bearing on the potential for harm to the child from a change in custody is that of the single medical expert who testified. Production of expert testimony to resolve the pertinent inquiry is desirable. Sorentino I, supra 72 N.J. at 133; Sorentino II, supra 74 N.J. at 320; Sees v. Baber, supra 74 N.J. at 221. This expert's qualifications and opinion stand unquestioned, uncontradicted and unrefuted in the record. His opinion is inherently plausible and strikingly similar to that given by the expert in Sorentino II, supra 74 N.J. at 320. We see no reason to discount or ignore his testimony. It was his opinion that a transfer of custody of George Jr. at this time from plaintiff, the psychological mother, would involve more than a speculative possibility of harm to George Jr. He stated that there was a probability of severe and long-term psychological damage should a transfer of custody occur. His opinion is based upon his examination of George Jr., plaintiff and defendant and the record. We accept it. It is our conclusion that the child's best interests require that his custody be awarded to the plaintiff.
The judgment entered below is vacated and the entire matter is remanded to the trial court for the entry of a judgment returning George Jr. to the custody of plaintiff Adele Hoy immediately.
No costs to either party.