185 N.J. Super. 77 (1982)
E.T., PLAINTIFF-RESPONDENT,
v.
L.P., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1982.
Decided April 7, 1982.
*78 Before Judges MILMED, JOELSON and GAULKIN.
*79 John A. West argued the cause for defendant-appellant (Rutgers Legal Aid Clinic, Cedric A. Edwards, Acting Director, attorney).
Eldridge Hawkins argued the cause for plaintiff-respondent (Walter A. Oliveras on the brief).
The opinion of the court was delivered by MILMED, P.J.A.D.
Defendant L.P., the mother of T.L., an infant now nine years old, appeals from an order of the Essex County Juvenile and Domestic Relations Court awarding custody of the child to plaintiff E.T., the mother's aunt, "until further order of [the] Court," with overnight visitation to the mother, at her home, every other weekend. The order also provides for both parties to have "partial visitation on all major holidays ... and such other visitation as agreed upon" by them.
Following the filing of a "Best Interest" report by the chief probation officer of the county, a plenary hearing was conducted on plaintiff's complaint seeking custody of the infant. After hearing testimony from the parties and the mother's brother and after interviewing the child in chambers, the trial judge, in a letter opinion, found that the child "has been exposed to excessive abuse of marijuana by adults while in the mother's home"; that "the child himself was caused to smoke marijuana by his mother"; that "this had an adverse [e]ffect" on the child; that "the home of [E.T.] is a better home for the child than that of [L.P.], his mother"; that the infant's mother "is absolutely without concern with respect to use and abuse of marijuana in the child's presence"; that the child is "obviously happy and well adjusted in the home of his aunt"; that it is "the child's wish that he should remain with the aunt," and that "the mother's home in which the child had resided was not a good environment for the child from a standpoint of the education, clothing or facilities provided." The trial judge concluded:

*80 While the court does not determine that the home in which the child was residing was totally unfit or that the mother was unfit, it is clear that the best interest of this child requires that custody continue with the aunt, who is providing a far more suitable home for the child.
N.J.S.A. 9:2-9, the statute applicable to the action instituted by plaintiff, reads as follows:
When the parents of any minor child or the parent or other person having the actual care and custody of any minor child are grossly immoral or unfit to be intrusted with the care and education of such child, or shall neglect to provide the child with proper protection, maintenance and education, or are of such vicious, careless or dissolute habits as to endanger the welfare of the child or make the child a public charge, or likely to become a public charge; or when the parents of any minor child are dead or cannot be found, and there is no other person, legal guardian or agency exercising custody over such child; it shall be lawful for any person interested in the welfare of such child to institute an action in the Superior Court or the Juvenile and Domestic Relations Court in the county where such minor child is residing, for the purpose of having the child brought before the court, and for the further relief provided by this chapter. The court may proceed in the action in a summary manner or otherwise.
N.J.S.A. 9:2-10, the companion statute governing the dispositional order in the matter, provides:
In an action brought pursuant to section 9:2-9 of this Title, the Superior Court, or the Juvenile and Domestic Relations Court, as the case may be, after an investigation shall have been made by the chief probation officer of the county in which the child may reside, concerning the reputation, character and ability of the plaintiff, or such other person as the court may direct, to properly care for such child, shall make an order or judgment committing the child to the care and custody of such person, who will accept the same, as the court shall for that purpose designate and appoint, until such child shall attain the age of eighteen years, or the further direction of the court; provided, however, that in proper cases such care and custody may be exercised by supervision of the child in his own home, unless the court shall otherwise order. Such order or judgment may require the giving of a bond by the person to whose care or custody the said child may be committed, with such security and on such conditions as the court shall deem proper.
It is apparent from the record before us that plaintiff-aunt has failed to establish by competent proof any of the pertinent alternative jurisdictional grounds for institution of an action under N.J.S.A. 9:2-9. At least one of such grounds must be shown to exist before the trial judge, in light of the proofs and the report of the investigation of the chief probation officer of the county, can begin to consider what kind of dispositional *81 order under N.J.S.A. 9:2-10 would be in the best interests of the child. Thus, before an order such as the one under review could be made by the trial judge, it was incumbent on plaintiff to demonstrate, by clear and convincing competent evidence, that (1) defendant-mother (a) is "grossly immoral or unfit to be intrusted with the care and education of [the] child," or (b) "neglect[s] to provide the child with proper protection, maintenance and education," or (c) is "of such vicious, careless or dissolute habits as to endanger the welfare of the child or make the child a public charge, or likely to become a public charge..."; and (2) that the making of the order would be in the child's best interests. Plaintiff's proofs must comport with the criteria here required. The best interests of the child and the rights of the natural parent demand no less.
Here, however, while plaintiff in her complaint alleged that defendant (1) "provided an improper home environment for [the infant] causing him severe mental and physical distress"; (2) "reportedly forced the infant ... to smoke marijuana and drink beer..."; (3) "reportedly" severely beat the child "with a plastic baseball bat," and (4) "reportedly engages in sexual acts in [the] infant['s] ... presence"; the testimony at the plenary hearing, particularly when viewed in light of the "Best Interest" report of the chief probation officer of Essex County, fails to substantiate seriously any of the charges. Actually, there was no testimony at the hearing regarding beer drinking or sexual acts. And, the evidence regarding marijuana and spankings with a toy plastic baseball bat is at best nebulous and conflicting.
Defendant-mother testified that she "[o]n occasion" smokes marijuana at home but categorically denied ever having "given it" to her son, ever telling her brother or aunt that she did, or smoking it in her son's presence. She said, "he is only a child now. There's no way I would give him marijuana now. No way. If he was sixteen-seventeen then there's a possibility." She explained that she told her aunt, the plaintiff, "that they were smoking marijuana out in the playground all around him *82 and at the school right next door to him, and ... that if it came to a thing where he wanted marijuana I would prefer giving it to him rather than have him get it in the street." She said that if she found T.L. smoking marijuana, which if obtained "in the street" might contain "angel dust and everything else in it," she would "prefer" at that time to give it to him herself rather than "to take a chance and have him get some angel dust."
Defendant's brother, called as a witness by plaintiff-aunt, at whose home he lives, testified that he never saw his sister give T.L. marijuana although he saw people smoke it in his sister's apartment in the boy's presence, as he himself has done. He said that in "73 or 74" it was alleged that marijuana was given to the child,[1] "and since then it's been an on-going conversation about it." He said defendant's home was "unsanitary."
Plaintiff testified that she heard about defendant allowing the boy to smoke marijuana from defendant's sister-in-law in early February, 1980. However, the probation officer who made the "best interest" investigation for the trial court reported that when he visited defendant in June 1980 her sister-in-law was there and when he told the sister-in-law of plaintiff's "allegation" she "adamantly denied that she ever told [plaintiff] that the defendant had given the child marijuana or beer." The officer further reported:
... This officer also questioned the child who stated his mother did indeed give him marijuana. This is a direct contradiction of an interview conducted by a [social worker with] the Division of Youth and Family Services on 5-26-80. At that time the child denied this allegation. At the time [the social worker] felt that [T.L.] could be easily manipulated by adults.
There is also an allegation that the defendant severely beat the child with a plastic baseball bat. [Defendant] admits on two occasions she spanked the child with a plastic baseball bat but denies ever severely beating him. She further stated that her aunt also spanked the child with a plastic baseball bat.
The following additional pertinent information is gleaned from the "best interest" report. Defendant-mother has two additional children, a girl born in May 1977 and a boy born in *83 December 1978. The children appeared to the probation officer to be "healthy and very well-kept." T.L. resided with his mother until the end of May 1980. Since then he has been residing with plaintiff. The mother is "receiving assistance from the Essex County Welfare Board for herself and her two children... She receives no money from her husband." As the probation officer properly observed, "[i]t should be kept in mind that [defendant's] income is limited to her grant from the Essex County Welfare Board, this would greatly limit the type of housing that is available to her." In a statement taken at the County Probation Department offices in June 1980 defendant stated, among other things:
I feel I should have custody of [T.L.] because I love him, he is mine and I want him. He is part of my family. I have two other children besides him. I don't understand why I would do him one way and not the others. Her allegations about mistreating the child are not true. I did spank him twice with a plastic bat but she also uses a plastic bat according to my son....
Plaintiff is a retired nurse. She receives Social Security benefits, and her husband "a Railroad Pension." They own their own home which consists of 16 rooms and is occupied by them, T.L., a housekeeper and two boarders. The home "is far superior to that of [defendant]. It is much larger and the boy has his own room. He also has a playroom in the basement."
In his concluding observations the probation officer noted:
... There appears to be some long-standing animosity between the parties in this case. [When defendant was a child she] was ... raised by [plaintiff]. There was a great deal of conflict in the home and the defendant was eventually placed on probation for incorrigibility and for being a runaway. This has [led] to a great deal of hostility between the two parties which continues to this day. It is the feeling of this officer that both [plaintiff and defendant] are sincerely interested in the well-being of the child. [Defendant] appears to be doing reasonably well in caring for her other two children. Due to financial restrictions she can not provide as spacious and luxurious a home as [plaintiff]. If custody of the child were granted to [plaintiff], [T.L.] would be separated from his brother and sister.
After interviewing all parties this officer suspects that the child [T.L.] is attempting to take advantage of this situation. When questioned on May 27th by [the social worker] at the Division of Youth and Family Services the child stated that he wanted to live with his mother. Prior to this he had told [defendant's] attorney that he preferred to live with his aunt. Upon this *84 officer's interviewing him he again ... stated that he wanted to live with his aunt. When this officer spoke to the boy it could not be helped but noticed that his bedroom contained a great many toys. [Defendant] had told this officer that the child had been promised "anything he wants" by his aunt if he told the probation officer and the Court that he wanted to live with his aunt.
We approach our determination on this appeal bearing in mind certain basic principles particularly germane to the type of statutory proceeding instituted by plaintiff. Thus, at the outset, defendant-mother has the right to custody of her child as against plaintiff-aunt. See In re Flasch, 51 N.J. Super. 1, 18 (App.Div. 1958), certif. den. 28 N.J. 35 (1958). "This right, which recognizes the natural bond of blood and affection between parent and child ... has been described as akin to a trust reposed in the parent by the State, as parens patriae, for the welfare of the infant." In re Mrs. M., 74 N.J. Super. 178, 183-184 (App.Div. 1962). It may be lost or tempered upon plaintiff's sustaining her burden of establishing, by clear and convincing competent evidence, that one of the jurisdictional grounds for commencement of the action under N.J.S.A. 9:2-9 exists and, additionally, that the making of a dispositional order within the framework of N.J.S.A. 9:2-10 would be in the child's best interests.
We noted earlier that the trial judge specifically concluded that he did "not determine that the home in which the child was residing was totally unfit or that the mother was unfit." We also noted that the probation officer who investigated the matter for the trial court concluded that both parties "are sincerely interested in the well-being of the child" and that defendant-mother "appears to be doing reasonably well in caring for her other two children." Our review of the record convinces us that there was insufficient evidence to support a finding that the best interest of the child "requires that custody continue with the [plaintiff] aunt." The testimony of the three witnesses who did appear was at best scant and inconclusive, *85 undoubtedly because of the lack of in-depth direct and cross-examination. Beyond this, it appears that neither party had access to the "Best Interest" report until the moment the hearing actually began, at which time counsel were given five minutes to read it. It is not surprising, then, that throughout the transcript of the hearing no reference whatever is made to any portion of that comprehensive document.
The matter will, accordingly, be remanded to the trial court for supplementary proceedings, including a further plenary hearing at which all aspects of the "Best Interest" report are to be explored, with the parties given the opportunity to examine fully the investigator (probation officer) who made the "Best Interest Investigation" and prepared the report. See Annotation, "Right, in child custody proceedings, to cross-examine investigating officer whose report is used by court in its decision," 59 A.L.R.3d 1337 (1974). Cf. R. 4:79-8(d). The parties may also call and examine at such further hearing such additional witnesses as may be available, including the sister-in-law of defendant mentioned in the report, who may shed light on the allegations contained in the complaint and those referred to in the report. Upon conclusion of the further proceedings, the trial judge shall make his specific findings of fact, supplemental determination and dispositional order on all of the evidence, in keeping with the criteria set forth in the statutes, N.J.S.A. 9:2-9 and 9:2-10, and the pertinent principles set forth herein. See also, Annotation, "Award of custody of child where contest is between child's mother and grandparent," 29 A.L.R.3d 366 (1970). In order not to disrupt the child's education during the current school year, the order under review is to continue in effect pending such supplemental determination and dispositional order.
The matter is remanded to the trial court for further proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] The child was born in the summer of 1972.