200 N.J. Super. 171 (1985)
491 A.2d 7
IN THE MATTER OF D.T., AN INFANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1985.
Decided April 2, 1985.
*172 Before Judges MICHELS, PETRELLA and BAIME.
Ralph E. Faasse argued the cause for defendants-appellants C. and D.J. (Carbone & Faasse, attorneys; Ralph E. Faasse, of counsel and on the brief).
Lynne Strober argued the cause for plaintiff-respondent A.T. (Mandelbaum, Salsburg, Gold & Lazris, attorneys; Lynne Strober, of counsel, Michelle S. Silverman, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendants C. and D.J., the maternal grandparents of D.T., an infant, appeal from an order of the Chancery Division, Family Part, which awarded custody of D.T. to her natural father, plaintiff A.T. To afford D.T. a smooth transition to her new home and residence, the trial court ordered that plaintiff *173 not assume custody of D.T. until July 1, 1985, and established a visitation schedule for plaintiff with D.T. pending transfer of custody. The trial court appointed Rosemarie Bello Truland, Esq., guardian ad litem to monitor the progress of D.T.'s visitation with plaintiff pending the transfer and to propose a plan of visitation for defendants which would commence when plaintiff assumed custody.
The facts are fully recounted in the thorough letter opinion of Judge Nitto dated July 12, 1984, and need not be repeated here. It is sufficient to emphasize that plaintiff's daughter, D.T., was born to him and his wife, P., on November 21, 1978. During the next five years the family lived in Belleville, New Jersey, and then in Wallington, New Jersey. They had frequent contact with defendants, who were the parents of P. and who resided in Paterson, New Jersey. Plaintiff testified that from the time of his daughter's birth until the separation from his wife, he, his wife, and daughter saw the defendants almost every weekend. Sometime between February and April, 1983, plaintiff filed for divorce. The couple separated in August, 1983, although the circumstances of that separation were disputed in the record. Following the separation, P. took D.T. and moved in with her parents in Paterson. Plaintiff, after approximately a week, left the family apartment in Wallington and returned to his parent's home in Pennsylvania, where he now resides.
On January 15, 1984, P. died as a result of injuries sustained in an automobile accident. P.'s brother notified plaintiff, who left Pennsylvania to attend his wife's funeral. On the same day as his wife's burial plaintiff approached D.T.'s grandmother, D.J., and "asked if ... [he] could take [D.T.]." According to plaintiff, D.J. replied that "she would rather ... [he] didn't." Defendants, however, did not have legal custody of D.T. pursuant to any court order. They simply stood in loco parentis to the child by virtue of the fact that the child continued to reside with them and they voluntarily undertook the responsibility to care for her.
*174 Plaintiff returned to Pennsylvania and retained an attorney who, on January 27, 1984, filed a complaint and obtained an order to show cause to obtain custody of D.T. Plaintiff also obtained regular visiting rights with D.T. on Saturdays and Sundays between 10 a.m. and 4 p.m. pursuant to an order pendente lite entered on March 1, 1984. Defendants filed an answer resisting plaintiff's attempt to obtain custody of D.T., and although they did not file a counterclaim, sought an order continuing D.T.'s custody with them on the grounds that such an order would satisfy D.T.'s best interests and that plaintiff was an unfit parent. The trial court, after hearing testimony and considering psychological reports offered by experts on behalf of both parties and by court appointed experts, awarded custody of D.T. to plaintiff, her natural father. The trial court, applying a "parental fitness standard," held that the maternal grandparents (herein defendants) had "failed to meet their burden under N.J.S.A. 9:2-9 for establishing by clear and convincing evidence why plaintiff should be deprived of the custody of his daughter."[1] This appeal followed.
We are satisfied from our study of the record and the arguments presented that the trial court properly awarded *175 custody of D.T. to her natural father, the plaintiff. Contrary to defendants' claim, there is substantial credible evidence on the record as a whole to reasonably warrant the trial court's findings and conclusions that plaintiff was a fit custodial parent and that the defendants had failed to meet their burden of establishing by clear and convincing evidence that plaintiff should be deprived of custody of his natural daughter. We discern no good reason or legal justification for disturbing them. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 455-456 (1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974); State v. Johnson, 42 N.J. 146, 163 (1964).
Moreover, even assuming as defendants contend that the applicable test is whether the best interests of the child would be served by a custody award to a third person and that neither a finding of parental unfitness nor abandonment under N.J.S.A. 9:2-9 is a prerequisite to entry of such an order, see Hoy v. Willis, 165 N.J. Super. 265, 272 (App.Div. 1978); cf. E.T. v. L.P., 185 N.J. Super. 77, 81 (App.Div. 1982),[2] nonetheless, the defendant in this case did not overcome the strong presumption in favor of the natural parent's right to custody of his or her own child.[3] The right of natural parents to the custody of their *176 minor children is one of the basic rights incident to parenthood. "This right, which recognizes the natural bond of blood and affection between parent and child, is unlike a property right. It has been described as akin to a trust reposed in the parent by the State as parens patriae, for the welfare of the infant." In re Mrs. M., 74 N.J. Super. 178, 183-184 (App.Div. 1962). Indeed, the right of natural parents to the custody, care and nurturing of their children has risen to the stature of a fundamental right and deserves special protection. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); Stanley v. Illinois, 405 U.S. 645, 651-652, 92 S.Ct. 1208, 1212-1213, 31 L.Ed.2d 551 (1972) (and cases cited); In re Guardianship of Dotson, 72 N.J. 112, 122 (1976) (Pashman, J., concurring); State v. Perricone, 37 N.J. 463, 472 (1962), cert. den. 371 U.S. 890, 83 S.Ct. 189, 9 L.Ed.2d 124 (1962). See In re N., 96 N.J. Super. 415, 424-425 n. 5 (App.Div. 1967). Since the right of parents to the custody of their minor children is both a natural and legal right, the law should not disturb the parent/child relationship except for the strongest reasons and only upon a clear showing of a parent's gross misconduct or unfitness or of other extraordinary circumstances affecting the welfare of the child. See 59 Am.Jur. 2nd, Parent and Child, § 25 at 107-108 (1971). Thus, in determining a child's best interest, courts traditionally have been reluctant to deny a natural parent custody of his or her own child. In re Mrs. M., supra, 74 N.J. Super. at 183-184. See E.T. v. L.P., supra, 185 N.J. Super. at 84; Hoy v. Willis, *177 supra, 165 N.J. Super. at 272; In re N., supra, 96 N.J. Super. at 423-424.
The strong presumption favoring the natural parent's right to the custody of his or her minor children therefore constitutes judicial recognition that, in most instances, the child's best interests will be maximized by placing the child with his or her natural parent. In the circumstances of this case, we agree with the trial court that the defendant-grandparents are not entitled to the custody of the infant D.T. as against D.T.'s natural father, the plaintiff, who has shown no intent to abandon her and who is clearly not an unfit parent.
The other issues raised by defendants are clearly without merit and require no further explanation. R. 2:11-3(e)(1)(E).
Accordingly, the custody order under review is affirmed.
NOTES
[1] N.J.S.A. 9:2-9 provides:

When the parents of any minor child or the parent or other person having the actual care and custody of any minor child are grossly immoral or unfit to be intrusted with the care and education of such child, or shall neglect to provide the child with proper protection, maintenance and education, or are of such vicious, careless or dissolute habits as to endanger the welfare of the child or make the child a public charge, or likely to become a public charge; or when the parents of any minor child are dead or cannot be found, and there is no other person, legal guardian or agency exercising custody over such child; it shall be lawful for any person interested in the welfare of such child to institute an action in the Superior Court or the Juvenile and Domestic Relations Court in the county where such minor child is residing, for the purpose of having the child brought before the court, and for the further relief provided by this chapter. The court may proceed in the action in a summary manner or otherwise.
[2] Defendants contend that the trial court failed to consider the best interests of the child in resolving the question of custody. More specifically, they argue that unfitness under N.J.S.A. 9:2-9 is the appropriate criterion only where the issue presented pertains to severance or termination of parental rights. However, in view of our decision we need not resolve this issue in this case.
[3] Although plaintiff did not refer to N.J.S.A. 9:2-5 and the trial court did not cite the statute in its written opinion, plaintiff should have sought custody of his child under this provision. N.J.S.A. 9:2-5 implicitly recognizes the inherent right of the non-custodial parent to the reversion to his or her custody of the children born of the marriage upon the custodial parent's death and the satisfaction of the statutory conditions. The statute, which offers little guidance as to the appropriate standard for the court to apply in making a custody determination thereunder, reads as follows:

In case of the death of the parent to whom the care and custody of the minor children shall have been awarded by the Superior Court, or in the case of the death of the parent in whose custody the children actually are, when the parents have been living separate and no award as to the custody of such children has been made, the care and custody of such minor children shall not revert to the surviving parent without an order or judgment of the Superior Court to that effect. The Superior Court shall have the right, in an action brought by a guardian ad litem on behalf of the children, to appoint such friend or other suitable person, guardian of such minor children, and shall have the right to remove such guardian, and to appoint a new guardian or guardians, and to make such judgments and orders, from time to time, as the circumstances of the case and the benefit of the children shall require.