235 N.J. Super. 424 (1989)
563 A.2d 58
JOSEPH ZACK AND ANN ZACK, PLAINTIFFS-APPELLANTS,
v.
JACK FIEBERT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1989.
Decided August 18, 1989.
*425 Before Judges LONG, MUIR and KEEFE
Herman Osofsky argued the cause for appellants.
*426 James M. Andrews argued the cause for respondent (Kalb, Friedman, Siegelbaum and Moran, attorneys; James M. Andrews and Minda E. Maisel, on the brief).
The opinion of the Court was delivered by LONG, J.A.D.
Plaintiffs Joseph and Ann Zack are the maternal grandparents of the minor children Kenneth and Jennifer Fiebert. Plaintiffs' daughter, Mary Ann, the natural mother of the children, died in March 1987. Mary Ann's first marriage, which resulted in the birth of the children, ended in divorce in 1980. In February of 1982, Mary Ann married the defendant Jack Fiebert who adopted the two children in December of that year. Mary Ann developed leukemia in March of 1985. During her two year illness, the children spent much of their time at their grandparents' home. After Mary Ann's death, there was a traumatic confrontation between the Zacks and Feibert at her funeral resulting in a substantial change in their relationship and in the Zacks' visitation with their two grandchildren. In early 1988, Fiebert married a woman he met at a support group for widows and widowers. Fiebert and the two children presently live with his new wife and her three children.
This lawsuit began in the summer of 1987 when the Zacks filed a complaint seeking visitation and custody of their two grandchildren and a diagnostic investigation of Fiebert and the children. Among the allegations of the complaint were the Zacks' claims that the defendant has not adequately provided for the care, custody, education and maintenance of the children. Fiebert answered seeking dismissal of all three counts. The Zacks then moved for specific visitation, telephone contact and investigations to be performed by the Passaic County Diagnostic Center and the Passaic County Probation Department. By consent order dated October 27, 1987, the parties agreed to a visitation schedule. Later orders modified the visitation schedule and directed reports by DYFS, the Passaic *427 County Probation Department and the Passaic County Diagnostic Center.
The Probation Department report, prepared in May of 1988, recommended that the children be placed in the temporary custody of the Zacks until Fiebert received and benefitted from counseling. The Passaic County Diagnostic Center prepared a report on Feibert in May of 1988, which recommended that custody remain with him on condition that the Zacks enjoy a more relaxed visitation schedule, the parties participate in family therapy, the children and Fiebert receive individual counseling and Fiebert's new wife undergo an evaluation. The Passaic County Diagnostic Center positively evaluated Fiebert's new wife in the summer of 1988 and concluded that Fiebert "could offer an adequate parental environment for Jennifer and Kenny through some modifications in his temperament and attitude." In recommending that custody remain with Fiebert, the report stressed the need that the parties participate in therapy and that visitation become more flexible. The final conclusion was that because of the age of the Zacks, they were not prepared to provide a home environment suitable for raising adolescents.
In July of 1988, Fiebert filed a motion for partial summary judgment to dismiss the custody count of the Zacks' complaint. The trial judge rendered an oral decision granting Fiebert's motion:
The question is not whether it would be in the best interest for these children to remain with Jack [Fiebert] or to go with the grandparents, but rather the question is whether or not a hearing is required to determine that.... I have concluded that there is no commonlaw right that gives the grandparents in this situation standing in court to allege that a best interest hearing is required in order to determine the question of custody.
* * * * * * * *
In no case that I can find is there any basis for an allegation of someone other than the parent to seek to take from another parent or from a parent children, when those children are not actually in custody or that are actually in custody of that parent without some kind of an allegation that there is some kind of unfitness on the part of the parent. And I do believe the reports that I've alluded to, the Probation Report, Diagnostic Reports of August 23, 1988 and *428 May 18, 1988 put to rest the fact that this defendant is in fact an unfit parent, because he is not at least according to our reports. Secondly, I don't believe the statute confers that right. The statute confers a right to visitation on the part of the parent  grandparents which they before did not have. At least this statute was an effort by the Legislature to speak on this point and they spoke very clearly. They gave to grandparents the right of visitation. They chose not to give to grandparents the right to sue for custody under these circumstances. That does not mean that there are not circumstances under which grandparents may make this allegation, I suppose, in the case of an unfit father or whatever they could. But there's not that evidence in this case. I'm not saying that Jack Fiebert would be the most suitable parent for these children, although from the reports it seems that way. But I really haven't taken testimony on that question. Nor do I say that Joseph and Ann Zack would be unfit to have custody of these grandchildren. It's obvious to me that they have a great deal of affection for these grandchildren. And I think we should in this proceeding, if we can do anything, we can try to continue that relationship between grandparent and grandchild. That's a very important relationship and Jack as their father should realize that, that these children need to have that kind of relationship. But as far as I am concerned, I agree with the position adopted by Jack Fiebert through his attorney that no best interest hearing is required under these circumstances, unless there is an allegation of unfitness and I don't believe there is any unfitness in the defendant, Jack Fiebert.
Boiled down to its essentials, the trial judge's ruling had two prongs. First, he declared that the standard he would apply to the Zacks' claim for custody of their grandchildren as against Fiebert was one of unfitness. Second, he determined that the Zacks' allegations against Fiebert (even if believed) did not state a cause of action for unfitness thus rendering a plenary hearing unnecessary.
The Zacks appeal, claiming that they have standing to bring a custody action for their grandchildren without alleging that Fiebert is unfit, that the appropriate standard to be applied to their prayer for custody is that of the "best interests of the child," that on the evidence before the trial judge they were entitled to a plenary hearing as to best interests and that the grant of partial summary judgment to Fiebert on the custody issue was therefore error. Fiebert counters that the standard of unfitness applies where a third party seeks custody against a *429 natural parent[1] and that in applying that standard, the judge could not have reached any conclusion other than that dismissal was warranted.
We have carefully reviewed this record in light of the claims advanced and have determined that the trial judge applied the appropriate standard to the facts as alleged by the Zacks and reached the correct result. Thus, we affirm. In so doing, we think some analysis of what appear to be conflicting decisions in this field is necessary.
The standard governing the termination of parental rights is well established. As the Chief Justice observed in Matter of Baby M., 109 N.J. 396 (1988): "[t]he statutory descriptions of the conditions required to terminate parental rights differ; their interpretation in case law, however, tends to equate them." Id. at 444, citing New Jersey Div. of Youth and Family Services v. A.W., 103 N.J. 591, 601-611 (1986) (attempted termination by DYFS); In re Adoption by J.J.P., 175 N.J. Super. 420, 426-428 (App.Div. 1980) (attempted termination in connection with private placement adoption). The standard for termination is one of parental unfitness; "intentional abandonment or very substantial neglect of parental duties without a reasonable expectation of a reversal of that conduct in the future." Matter of Baby M., supra, 109 N.J. at 445, quoting N.J.S.A. 9:3-48c(1). This is an absolute rule in all termination cases.
In Matter of Baby M., the Supreme Court also affirmed the standard which applies to ordinary matrimonial custody actions: "the question of best interests of the child is dispositive of the custody issue in a dispute between natural parents...." Matter of Baby M., supra, 109 N.J. at 445.
*430 The Supreme Court has not, as yet, enunciated the standard to be applied in custody actions other than those involving both natural parents. Several decisions of this court, however, have addressed the question with varying results.[2] In Hoy v. Willis, 165 N.J. Super. 265 (App.Div. 1978), a foster parent appealed the return of custody of the foster child to its natural mother. The issue on appeal was whether the custody of the six year old child who had been living with his foster mother, a paternal aunt with whom he was voluntarily placed by his natural mother at the age of one and one-half years, should remain with the aunt or be returned to the biological mother with respect to whom no claim of unfitness or abandonment was advanced. Id. at 268-269. In allowing the aunt, whom the court characterized as the child's "psychological mother,"[3] to retain custody, the court said that it was adopting a best interests standard: "when the best interests of the child will *431 clearly be served by a custody award to a third party, a finding of either parental unfitness or abandonment is not a prerequisite to the entry of an order doing so." Id. at 272; see S.M. v. S.J., 143 N.J. Super. 379, 385 (Ch.Div. 1976).
In E.T. v. L.P., 185 N.J. Super. 77, 80 (App.Div. 1982), this court was faced with a trial judge's decision that a natural parent should be denied custody in favor of an aunt who was "providing a far more suitable home for the child." In reversing and remanding for further proceedings, the court applied a hybrid standard which included a finding of parental unfitness:
before an order such as the one under review could be made by the trial judge, it was incumbent on plaintiff to demonstrate, by clear and convincing competent evidence, that (1) defendant-mother (a) is `grossly immoral or unfit to be intrusted with the care and education of [the] child,' or (b) `neglect[s] to provide the child with proper protection, maintenance and education,' or (c) is `of such vicious, careless or dissolute habits as to endanger the welfare of the child or make the child a public charge, or likely to become a public charge .. .'; and (2) that the making of the order would be in the child's best interests. Plaintiff's proofs must comport with the criteria here required. The best interests of the child and the rights of the natural parent demand no less. [Id. at 81].
In the most recent foray into this arena, this court in Matter of D.T., 200 N.J. Super. 171, 175 & n. 2 (App.Div. 1985), when faced with a grandparents' application for custody, recognized both Hoy and E.T., but declined to resolve the question of whether unfitness or best interests is the appropriate standard in a third party custody case. It addressed the issue this way:
The right of natural parents to the custody of their minor children is one of the basic rights incident to parenthood. `This right, which recognizes the natural bond of blood and affection between parent and child, is unlike a property right. It has been described as akin to a trust reposed in the parent by the State as parens patriae, for the welfare of the infant.' In re Mrs. M., 74 N.J. Super. 178, 183-184 (App.Div. 1962). Indeed, the right of natural parents to the custody, care and nurturing of their children has risen to the stature of a fundamental right and deserves special protection. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); Stanley v. Illinois, 405 U.S. 645, 651-652, 92 S.Ct. 1208, 1212-1213, 31 L.Ed.2d 551 (1972) (and cases cited); In re Guardianship of Dotson, 72 N.J. 112, 122 (1976) (Pashman, J., concurring); State v. Perricone, 37 N.J. 463, 472 (1962), cert. den. 371 U.S. 890, 83 S.Ct. 189, 9 L.Ed.2d 124 (1962). See In re N., 96 N.J. Super. 415, 424-425 n. 5 (App.Div. 1967). Since the right of parents to the custody of their minor children is both a natural and legal right, the law should not disturb the *432 parent/child relationship except for the strongest reasons and only upon a clear showing of a parent's gross misconduct or unfitness or of other extraordinary circumstances affecting the welfare of the child. See 59 Am.Jur. 2nd, Parent and Child, § 25 at 107-108 (1971). Thus, in determining a child's best interest, courts traditionally have been reluctant to deny a natural parent custody of his or her own child. In re Mrs. M., supra, 74 N.J. Super. at 183-184. See E.T. v. L.P., supra, 185 N.J. Super. at 84; Hoy v. Willis, supra, 165 N.J. Super. at 272; In re N., supra, 96 N.J. Super. at 423-424. [Id. at 175-176].
At first blush, these decisions are perplexing. We have struggled with them and with the underlying issue and have concluded that the results in these cases are reconcilable. We hold that there is no single standard applicable in every third party custody case; the standard to be applied depends upon the status of the third party vis a vis the natural parent and the child.
Under ordinary circumstances, a custody action by a third party against a natural parent is more like a termination action than a custody action between biological parents. Although visitation may be preserved, such an award destroys any pretense of a normal parent-child relationship and eliminates nearly all of the natural incidents of parenthood including the everyday care and nurturing which are part and parcel of the bond between a parent and child. Thus, normally, when a third party seeks custody as against a natural parent, the standard should be the termination standard of unfitness. See E.T. v. L.P., supra, 185 N.J. Super. at 81. The application of this standard is footed in the presumption in favor of the natural parent's superior right to custody. See Matter of D.T., supra, 200 N.J. Super. at 175-176.
However, where, as a preliminary matter, the third party is able to show that he or she stands in the shoes of a parent to the child and thus in parity with the natural parent, he or she should be accorded the status of a natural parent in determining the standard to be applied to the quest for custody. In such circumstances, the best interests test should apply. See *433 Matter of Baby M., supra, 109 N.J. at 445. This two-step analysis harmonizes the expressed as well as the unexpressed underpinnings of Hoy, E.T. and D.T.
The explicit finding in Hoy was that the maternal aunt with whom a six year old child lived most of his life was his "psychological mother." Hoy v. Willis, supra, 165 N.J. Super. at 277. This paved the way for Hoy's application of the best interests test. On the contrary, in E.T. no such claim was advanced and the third party had no enhanced status. Thus, the unfitness test was properly applied. In D.T., the requirement of a showing of unfitness was reaffirmed as the standard necessary to defeat the presumption in favor of custody to the natural parent while "extraordinary circumstances affecting the welfare of the child" was identified as a consideration. Matter of D.T., supra, 200 N.J. Super. at 176. We think a preliminary showing by a third party that he or she stands in the position of a parent vis a vis the child is the "extraordinary circumstance" referenced in D.T. Only upon such a preliminary showing is the presumption in favor of the natural parent rebutted. In that case, the third party parent and the biological parent stand in parity and the best interests test applies.
Turning now to the facts of this case, not even the most liberal reading of the Zacks' pleadings and certifications would support the conclusion that they stand in a parent-child relationship with their grandchildren. Indeed, that is not the gist of their claim. Thus, the standard to be applied to their custody action is, as the trial judge conceived it, one of unfitness. No genuine issue of material fact was presented with respect to that issue. Even assuming that all of the Zacks' allegations as to Feibert are true, they simply do not establish that he is an unfit parent or warrant our interference with his exercise of custody over the children.
Affirmed.
NOTES
[1] Fiebert, as an adoptive parent, is entitled to the same "relationships, rights, duties and obligations" with respect to the children as if they were born to him. N.J.S.A. 9:3-50b; see In re Adoption of G., 89 N.J. Super. 276, 281 (Mon.Cty.Ct. 1965).
[2] In addressing the question of custody disputes between a natural parent and a third party, courts of other jurisdictions have generally based their decisions on two basic doctrines which are not always clearly distinguished in the opinions. See generally 59 Am.Jur.2d, Parent and Child, § 28 at 162-166 (1987); Annotation, Award of Custody of Child Where Contest is Between Child's Parents and Grandparents, 31 A.L.R.3d 1187 (1970); Annotation, Award of Custody of Child Where Contest is Between Child's Mother and Grandparent, 29 A.L.R.3d 366 (1970); Annotation, Award of Custody of Child Where Contest is Between Child's Father and Grandparent, 25 A.L.R.3d 7 (1969). The "parental right" doctrine holds that in the absence of a finding of unfitness, the natural parent is entitled to custody; the "best interests of the child" doctrine holds that custody awards should be controlled by the best interests of the child without regard to the fitness of the natural parent. 59 Am.Jur.2d, supra, at 162-164; 31 A.L.R.3d, supra, at 1190-91, 1196-98; 29 A.L.R.3d, supra, at 379-80, 390-94; 25 A.L.R.3d, supra, at 20-21, 32-40. It has been suggested that these two theories are not in actual conflict, because the "best interests of the child" doctrine presumes that custody by the natural parent will be in the child's best interests. Id.
[3] The theory of psychological parentage was first enunciated in Sorentino v. Family & Children's Soc. of Elizabeth, 72 N.J. 127, 131-132 (1976), where our Supreme court recognized that there is a serious potential for psychological harm to young children if they are removed from a foster home where they had lived and been nurtured during their early years.